820 N.E.2d 392 (2004)
213 Ill.2d 105
289 Ill.Dec. 616
In re M.M.D., a Minor (Christopher R. Johnson, Appellant, v. Christopher Duncan, et al., Appellees).
No. 97537.
Supreme Court of Illinois.
November 18, 2004.
*394 Linda S. Groezinger and Kevin Lowe, of Lowe & Groezinger, P.C., West Peoria, for appellant.
John R. Pusey, of Vonachen, Lawless, Trager & Slevin, Peoria, for appellees.
Justice RARICK delivered the opinion of the court:
At issue in this case is whether Wickham v. Byrne, 199 Ill.2d 309, 263 Ill.Dec. 799, 769 N.E.2d 1 (2002), which declared Illinois' grandparent visitation statute to be unconstitutional, invalidated a preexisting agreement approved by the circuit court of Peoria County granting visitation rights to a child's grandparents. The circuit court held that it did not. On a permissive interlocutory appeal brought under Supreme Court Rule 308 (155 Ill.2d R. 308), the appellate court reached the same conclusion and affirmed. 344 Ill.App.3d 345, 279 Ill.Dec. 543, 800 N.E.2d 831. One justice dissented. We granted *395 leave to appeal from the appellate court's judgment. 177 Ill.2d R. 315. For the reasons that follow, we now affirm.
The facts are not in dispute. Roxanna L. Duncan died on September 30, 1996, while giving birth to her daughter, M.M.D. M.M.D. survived. Roxanna's parents, Christopher and Sue Duncan (the Duncans) subsequently petitioned the circuit court of Peoria County to be appointed M.M.D.'s guardians. While the guardianship proceedings were pending, the circuit court entered an interim order pursuant to section 11a-4 of the Probate Act of 1975 (755 ILCS 5/11a-4 (West 1996)), granting the Duncans temporary guardianship of M.M.D. and giving them temporary custody of her.
Several months after M.M.D.'s birth, Christopher Johnson brought an action in the circuit court of Peoria County under the Illinois Parentage Act of 1984 (750 ILCS 45/1 et seq. (West 1996)) to establish that he was her father. In April of 1999, when M.M.D. was approximately 2½ years old, the circuit court entered an agreed order declaring that Johnson was M.M.D.'s father. With consent of the parties, Johnson's parentage action was then consolidated with the Duncans' guardianship proceedings, which remained pending. Johnson requested and received the right to visit M.M.D. At the same time, he was ordered to pay 20% of his income to the Duncans for child support.
M.M.D. is not Johnson's only child. According to the record, Johnson is also the father of C.T.J., born three months after M.M.D.; C.J., born March 11, 1991; C.K.J., born July 18, 1990; B.F., born March 3, 1986; and Nakeitha Tyler, born May 9, 1983. M.M.D. was likewise not Roxanna's only child. Roxanna also had a son, I.N.D., by a man named Gaylord Ford. Following Roxanna's death, the court granted temporary guardianship of I.N.D. to Ford.
C.T.J., C.J., and C.K.J. all resided with Johnson and his wife, Roshawn. The family's financial circumstances were strained. According to a financial affidavit filed by Johnson in this matter, his monthly income was less than $2,300. His monthly expenses, including health insurance, housing, food, child-care and other costs, and payments stemming from bankruptcy exceeded $7,400.
Faced with this imbalance, Johnson failed to make the child support payments to the Duncans ordered by the circuit court. On Christopher Duncan's motion, the court ordered Johnson to show cause why he should not be held in contempt of court. Johnson's attorneys then sought and obtained leave to withdraw from the case. The reason for their withdrawal was that Johnson had not paid them.
Johnson retained replacement counsel. In April of 2000, Johnson's new lawyer filed a petition on his behalf asking that he be awarded custody of M.M.D. and that the Duncans' guardianship of her be terminated. Johnson's motion was opposed by the Duncans, who argued that permanent custody of M.M.D. should be awarded to them.
The litigation continued for over a year. Finally, on July 17, 2001, Johnson and the Duncans reached an agreement under which the Duncans' temporary guardianship of M.M.D. was to terminate and Johnson was to obtain permanent custody of the child. The agreement further provided that the Duncans were to receive specific and detailed visitation rights, telephone access to the child, information about the child's education and medical care, and authorization to speak with the child's teachers, school personnel, counselors and physicians regarding her progress and circumstances. This agreement was *396 executed by the parties, their attorneys and the child's guardian ad litem, and incorporated into an order filed by the court.
In October of 2001, the circuit court found that Johnson owed Christopher Duncan $1,961.61 in arrearages and ordered him to pay that sum in installments of $400 per month. Less than two months after that, Christopher Duncan petitioned for a rule to show cause why Johnson should not be held in contempt for violating the terms of the July 17, 2001, visitation agreement incorporated into the order filed by the circuit court.
An order to show cause was entered by the circuit court on December 6, 2001. On April 18, 2002, this court filed its opinion in Wickham v. Byrne, 199 Ill.2d 309, 263 Ill.Dec. 799, 769 N.E.2d 1 (2002). Wickham involved two consolidated cases in which a child had lost a parent and the deceased parent's parents (the child's grandparents) were granted visitation by the court, over the objection of the surviving parent, pursuant to the so-called grandparent visitation statute set forth in section 607(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(b) (West 2000)).
Section 607(b) stated, in pertinent part:
"(b)(1) The court may grant reasonable visitation privileges to a grandparent, great-grandparent, or sibling of any minor child upon petition to the court by the grandparents or great-grandparents or on behalf of the sibling, with notice to the parties required to be notified under Section 601 of this Act, if the court determines that it is in the best interests and welfare of the child, and may issue any necessary orders to enforce such visitation privileges. Except as provided in paragraph (2) of this subsection (b), a petition for visitation privileges may be filed under this paragraph (1) * * * if one or more of the following circumstances exist:
(A) the parents are not currently cohabiting on a permanent or an indefinite basis;
(B) one of the parents has been absent from the marital abode for more than one month without the spouse knowing his or her whereabouts;
(C) one of the parents is deceased;
(D) one of the parents joins in the petition with the grandparents, great-grandparents, or sibling; or
(E) a sibling is in State custody.
* * *
(3) When one parent is deceased, the surviving parent shall not interfere with the visitation rights of the grandparents." 750 ILCS 5/607(b) (West 2000).
The surviving parents in the two consolidated cases in Wickham challenged the constitutionality of the foregoing provisions, arguing that they impermissibly infringed on a parent's fundamental right to make decisions concerning the care, custody and control of his or her children. After considering relevant authority from the United States Supreme Court and from this court, we found the surviving parents' arguments to be meritorious. We wrote:
"Section 607(b)(1) exposes the decision of a fit parent to the unfettered value judgment of a judge and the intrusive micromanaging of the state. Because we can conceive of no set of circumstances under which section 607(b)(1) of the Act would be valid, we hold that it is unconstitutional on its face. For the same reasons, we hold that section 607(b)(3) is facially unconstitutional." Wickham, 199 Ill.2d at 320-21, 263 Ill.Dec. 799, 769 N.E.2d 1.
*397 Four months after we decided Wickham, Johnson petitioned the circuit court to modify the grandparent visitation agreement reached by the parties on July 17, 2001, and incorporated into the court's order. Johnson predicated his petition on section 607(c) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/607(c) (West 2002)), which authorizes a court to "modify an order granting or denying visitation rights of a parent whenever modification would serve the best interest of the child."[1]
As grounds for seeking modification of the visitation agreement, Johnson claimed that after the agreement was reached, the Duncans "continually and repeatedly interfere[d] with [his] ability to establish and maintain a parent child relationship." Fourteen specific examples were alleged. Among these were an insistence by the Duncans that M.M.D. refer to them as "mom" and "dad"; calling the principal of M.M.D.'s school in an attempt to obtain her school records; coming to Johnson's house when M.M.D. missed school to inquire as to the reason for her absences; constantly questioning M.M.D. regarding the Johnson's household procedures; and "repeatedly and continually" questioning Johnson and M.M.D. regarding M.M.D.'s clothing. Johnson's motion asked that the Duncans be restrained from referring to themselves as M.M.D.'s parents; that they be prohibited from calling and harassing Johnson, his family and M.M.D.'s schools; that they not be allowed to take M.M.D. without his express permission; and that their visitation be curtailed to one weekend per month.
In addition to seeking modification of the visitation agreement, Johnson's petition argued, in the alternative, that the visitation agreement should be terminated. Johnson based that argument on this court's decision in Wickham. Although the visitation agreement between Johnson and the Duncans did not invoke the provisions of the grandparents visitation statute struck down in Wickham, Johnson asserted that Wickham and the authorities on which Wickham was based rendered the agreement void and unenforceable as a matter of law.
Johnson's petition was heard December 2, 2002. After considering counsel's arguments, the circuit court concluded that Wickham did not nullify the parties' visitation agreement. In an order dated December 16, 2002, the court held that the visitation agreement remained valid and enforceable. It therefore denied Johnson's petition to terminate that agreement. Johnson's alternative claim that the Duncans' conduct warranted modification of the agreement was not reached.
Johnson filed a motion to reconsider. Christopher Duncan, in turn, filed a new motion for a rule to show cause why Johnson should not be held in contempt for failing to meet his court-ordered support obligations. The motion for a rule to show cause was allowed on March 5, 2003. One week later, the court denied Johnson's motion to reconsider the denial of his petition to terminate. In so doing, the court made a written finding under Supreme Court Rule 308(a) (155 Ill.2d R. 308(a)) that its order denying Johnson's petition involved a question of law as to which there are substantial grounds for difference of opinion *398 and that an immediate appeal from that order may materially advance the ultimate termination of the litigation. The specific question of law identified by the circuit court was
"whether [the] Court has jurisdiction to enforce a visitation order entered on July 17, 2001 based on common law jurisdiction, or whether, due to the courts' recent decisions of Wickham v. Byrne, * * * the visitation agreement is now void as a matter of law and therefore terminated."
The appellate court granted Johnson's petition for leave to bring an interlocutory appeal under Rule 308(a). With one justice dissenting, the appellate court subsequently affirmed the judgment of the circuit court. It agreed with the trial judge that the judicial decisions declaring the grandparent visitation provisions of the Illinois Marriage and Dissolution of Marriage Act to be unconstitutional did not render the Duncans' visitation rights under the agreement here void and unenforceable as a matter of law. The court ruled, however, that the circuit court's order granting visitation to the Duncans "must pass scrutiny under the principles articulated in Wickham." The court expressed no view on whether the order comported with Wickham. Rather, it held that the issue should be addressed by the circuit court in the first instance and that the matter could be raised in the context of proceedings to modify the visitation order. 344 Ill.App.3d at 349, 279 Ill.Dec. 543, 800 N.E.2d 831.
Johnson petitioned this court for leave to appeal (177 Ill.2d R. 315), which we allowed. Johnson subsequently elected to have his petition stand as his brief (177 Ill.2d R. 315(g)) and waived oral argument. Oral argument was also waived by the Duncans. The matter is now before us for a decision on the merits. Because the appeal concerns a question of law certified by the circuit court pursuant to Supreme Court Rule 308, our review is de novo. Feltmeier v. Feltmeier, 207 Ill.2d 263, 266, 278 Ill.Dec. 228, 798 N.E.2d 75 (2003).
Parents have a fundamental right to make decisions regarding the care, custody and control of their children. Encompassed within that right is the right to determine when, under what conditions and with whom their children associate. Lulay v. Lulay, 193 Ill.2d 455, 470-76, 250 Ill.Dec. 758, 739 N.E.2d 521 (2000). Whether a child should have visitation with his or her grandparents is therefore a matter for the child's parents, not a judge. The decision by a fit parent regarding the child's visitation with grandparents cannot be overridden by the courts, even if that decision appears arbitrary or is motivated by reasons which seem wrong. Wickham, 199 Ill.2d at 320-22, 263 Ill.Dec. 799, 769 N.E.2d 1. That is why Wickham declared the grandparent visitation statute unconstitutional. As indicated earlier in this opinion, the statute was found to be invalid because it exposed the decision of fit parents regarding visitation to "the unfettered value judgment of a judge and the intrusive micromanaging of the state." Wickham, 199 Ill.2d at 320, 263 Ill.Dec. 799, 769 N.E.2d 1.
The need to shield parental decisionmaking from second-guessing by the state is not implicated in the case before us today. The order regarding grandparent visitation at issue here was not imposed by the court against the parent's wishes. It was entered pursuant to an agreement negotiated between Johnson, the child's father, and the Duncans, the child's grandparents. It is a consent decree. See Burchett v. Goncher, 235 Ill.App.3d 1091, 1094, 177 Ill.Dec. 220, 603 N.E.2d 1 (1991). It must therefore be *399 evaluated according to principles governing consent decrees.
A consent decree is based upon the agreement of the parties and is contractual in nature. Filosa v. Pecora, 18 Ill.App.3d 123, 127, 309 N.E.2d 356 (1974). It is a recordation of the parties' private agreement, not an adjudication of their rights. Once such a decree has been entered, it is generally binding on the parties and cannot be amended or varied without the consent of each party. Burchett, 235 Ill.App.3d at 1094, 177 Ill.Dec. 220, 603 N.E.2d 1.
An exception to this rule applies where the contract is void as contrary to public policy. Whether an agreement is contrary to public policy depends on the particular facts and circumstances of the case. O'Hara v. Ahlgren, Blumenfeld & Kempster, 127 Ill.2d 333, 341-42, 130 Ill.Dec. 401, 537 N.E.2d 730 (1989). The courts are reluctant to restrict the freedom of citizens to make their own agreements. Declaring a contract void and unenforceable is a power the courts therefore exercise sparingly. An agreement will not be held void, as being contrary to public policy, unless it is
"`clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless [it is] manifestly injurious to the public welfare.'" H & M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc., 209 Ill.2d 52, 57, 282 Ill.Dec. 160, 805 N.E.2d 1177 (2004), quoting Schumann-Heink v. Folsom, 328 Ill. 321, 330, 159 N.E. 250 (1927).
The visitation agreement here does not meet that stringent standard. Grandparents often play a uniquely positive role in a child's upbringing. For a parent to permit visitation between the child and the child's grandparents is a time-honored, often cherished aspect of family life. In no sense can such arrangements be regarded as "manifestly injurious to the public welfare." Moreover, there is nothing in the record before us to suggest that the agreement at issue here was anything but beneficial for everyone concerned at the time it was adopted. The Duncans had cared for and nurtured the child for many years and had an obvious desire to maintain their relationship with her. Johnson was taking the commendable step of assuming his paternal obligations with respect to the child and wished to make her a part of his existing family. The child was able to experience the love and support of both her grandparents and her father as she made the transition from one household to the other. The agreement advanced all these interests.
The agreement was also not "clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy." The constitution prohibits the state from forcing fit parents to yield visitation rights to a child's grandparents when the parents do not wish to do so merely because a trial judge believes that such visitation would be appropriate. See Wickham, 199 Ill.2d at 320-22, 263 Ill.Dec. 799, 769 N.E.2d 1. There is no corresponding constitutional prohibition against a fit parent's decision to voluntarily bestow visitation privileges on his child's grandparents. To the contrary, the very constitutional principles that required us to strike down the grandparent visitation statute in Wickham require that a parent's voluntary visitation decision be honored. If fit parents have a fundamental right to make decisions regarding the care custody and control of their children, as Wickham and the cases on which it was based held, they must likewise have the fundamental right to *400 agree to visitation by the children's grandparents if they wish to do so. To hold otherwise would require us to fashion a rule under which a parent's right to choose the persons with whom a child associates somehow stops at the grandparents' front door. We can see no possible justification for imposing such a limitation. The constitutional protections afforded parenthood therefore obligate the courts to uphold voluntary visitation agreements made by fit parents, not declare them invalid. As a result, the circuit and appellate courts were correct to conclude that the voluntary visitation agreement into which Johnson entered with the Duncans was not void and unenforceable.
Johnson's petition to terminate alleges that he would not have entered into the visitation agreement with the Duncans had he known that the grandparent visitation statute would subsequently be declared unconstitutional. In making that claim, Johnson appears to be arguing that this dispute falls within the line of cases holding that a party may avoid a contract, as a matter of equity, based on mistake. Without reaching the merits of Johnson's argument, we note simply that it does not provide an adequate basis for reversing the judgments of the circuit and appellate courts in this case. Even if the conditions necessary to avoid a contract based on mistake could be established here, the circuit court did not err in rejecting Johnson's claim that the agreement was a nullity as a matter of law. A mutual mistake as to a basic assumption on which an agreement was made does not render the agreement void. At most, the agreement is merely voidable by the injured party. See Restatement (Second) of Contracts § 152 (1981); Diedrich v. Northern Illinois Publishing Co., 39 Ill.App.3d 851, 857, 350 N.E.2d 857 (1976).
Although the circuit and appellate courts were therefore correct in rejecting Johnson's claim that the visitation agreement was void as a matter of law, there is one aspect of the appellate court's disposition with which we do not agree. In reaching the result it did, the appellate court invoked common law principles governing a court's right to award grandparents visitation privileges beyond those granted by the child's parents. Those principles are inapplicable here. As we have pointed out at several points in this opinion, the case before us involves a consent decree. The Duncans' visitation rights under that decree were conferred voluntarily by Johnson. They were not imposed by the court and did not exceed the limits to which Johnson agreed. Accordingly, the common law authority of courts to award grandparent visitation beyond that allowed by the child's parents is of no relevance.
Because the Duncans' visitation rights were conferred by Johnson pursuant to a voluntary agreement, we must likewise reject the appellate court's determination that those rights are subject to scrutiny under the principles articulated by our court in Wickham. The trial judge in this case did not seek to substitute his judgment regarding grandparent visitation for the judgment of the child's parent. The order he entered merely gave effect to the parent's own wishes. Because Wickham was not addressed to that situation, the order before us now need not be reviewed on remand to see if it is in accord with the views we expressed in Wickham.
In reaching this conclusion, we hasten to add that the scope of our opinion today is narrow. This appeal reached the appellate court pursuant to our Rule 308, and our decision is addressed solely to the question of whether, under Wickham, the consent decree is void as a matter of law. As *401 indicated earlier in this disposition, however, that was not Johnson's only claim in the trial court. He also asserted, in the alternative, that because of events which transpired after the decree was entered, modification of the visitation arrangements was necessary in order to serve M.M.D.'s best interests.
That claim has not yet been considered by the circuit court, and nothing in this opinion precludes the circuit court from taking it up on remand should Johnson elect to pursue it. The contractual nature of the consent decree limits when and under what circumstances the parties to the agreement may seek to alter its terms. As our appellate court has correctly recognized, however, provisions regarding child support and visitation, including those embodied in a consent decree, are always subject to modification by a court upon changed circumstances when necessary to promote the child's best interests. See Dull v. Dull, 73 Ill.App.3d 1015, 1017, 29 Ill.Dec. 864, 392 N.E.2d 421 (1979); Golden v. Braunfeld, 22 Ill.App.3d 344, 317 N.E.2d 336 (1974).
Should the circuit court ultimately determine that modification is necessary in this case to serve M.M.D.'s best interests, it must adhere to the principles we articulated in Wickham when fashioning its order. In particular, we would direct the circuit court to the following language from Wickham, which we believe has special meaning here:
"In most cases, the relationship between a child and his or her grandparents is a nurturing, loving relationship that provides a vital connection to the family's history and roots. However, as with all human relationships, conflicts may arise between a child's parents and grandparents. In many cases, this conflict will concern disagreements about how a parent is raising his or her children. Yet, this human conflict has no place in the courtroom. This is true even where the intrusion is made in good conscience, such as the request for visitation to preserve the child's only connection to a deceased parent's family. Parents have the constitutionally protected latitude to raise their children as they decide, even if these decisions are perceived by some to be for arbitrary or wrong reasons. The presumption that parents act in their children's best interest prevents the court from second-guessing parents' visitation decisions. Moreover, a fit parent's constitutionally protected liberty interest to direct the care, custody, and control of his or her children mandates that parents  not judges  should be the ones to decide with whom their children will and will not associate." Wickham, 199 Ill.2d at 321-22, 263 Ill.Dec. 799, 769 N.E.2d 1.
For the foregoing reasons, the judgment of the appellate court is affirmed.
Affirmed.
NOTES
[1] Johnson invoked the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 et seq. (West 2002)) because modification of an order for support, custody or visitation entered under the Illinois Parentage Act of 1984, as the order here was, must be made in accordance with the relevant factors specified in that statute. 750 ILCS 45/16 (West 2002); see DeBilio v. Rodgers, 337 Ill.App.3d 614, 617, 272 Ill.Dec. 9, 786 N.E.2d 548 (2002).