2026 IL App (2d) 260001-U
No. 2-26-0001
Order filed June 1, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

*In re* THE PARENTAGE OF M.G.T., a minor.

(JACOB C., Petitioner-Appellant v. ALLYSSA T., Respondent-Appellee)

Appeal from the Circuit Court of Kendall County.
Honorable Carlo D. Colosimo, Judge, Presiding.
No. 22-FA-138

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1      *Held*: The trial court's allocation judgment on significant decision-making responsibilities and parenting time was not contrary to the manifest weight of the evidence; all other non-final claims are dismissed.

¶ 2      Jacob C. appeals from the circuit court's allocation judgment which granted him joint parental responsibilities and parenting time, along with her mother, Allyssa T., for their daughter, the minor, M.G.T. On appeal, Jacob appears to argue that the court erred in granting any decision-making authority or parenting time to Allyssa. He raises other issues as well, but because the only order properly before us is the allocation judgment, we dismiss in part and affirm the judgment under review.

¶ 3                                  I. BACKGROUND

¶ 4     The record indicates that at the time Jacob filed his notice of appeal, there was a motion for change of venue pending in the circuit court. Accordingly, because proceedings in the circuit court have not concluded, the only judgment we may review at this time is the allocation judgment pursuant to Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016). Accordingly, we confine ourselves to the issues relevant to M.G.T.'s custody and we dismiss from this appeal any additional issues, such as claims related to child support and Jacob's continuing request for a court-appointed psychiatric expert. Absent the conclusion of proceedings in the circuit court, or an immediate-appealability finding, we have no jurisdiction to consider those issues.

¶ 5     We note, too, that both parties have largely been *pro se* in the circuit court and in this court. While that is their right, their lack of legal experience has resulted in a chaotic record, with multiple overlapping motions and petitions; appellate briefs improperly addressing issues outside the record; and missing transcripts from important court proceedings, such as the oral rendition of the allocation judgment, which no doubt are highly relevant to our review. We have elected to ignore these shortcomings as the record, though vertiginous, is nevertheless sufficient for us to review the allocation judgment. Suffice it to say, however, this is not the first time we have admonished the parties about their understanding of appellate jurisdiction or the need for compliance with the rules regarding appellate briefing. *In re the Parentage of M.G.T.*, No. 2-25-0052 (2025) (summary order); *In re the Parentage of M.G.T.*, No. 2-24-0371 (2024) (summary order).

¶ 6     The minor, M.G.T., was born in January 2018. In September 2022, Jacob filed this parentage action while he was incarcerated, seeking visitation with the minor. During this time, Jacob was serving a 13-year negotiated sentence for multiple felony offenses including armed violence and aggravated battery of a pregnant person. The victim of the latter offense was Allyssa.

See generally *People v. Currey*, 2024 IL App (2d) 230099; *People v. Currey*, No. 2-21-0731 (2022) (summary order). Meanwhile, the parentage case remained on the docket. In November 2023, it was determined that Jacob was M.G.T.'s biological father. After Jacob was paroled, the parties proceeded by way of a series of interim visitation agreements, which began with supervised visitation and eventually developed into M.G.T. spending the majority of her time in Jacob's care. As both parties had routinely filed motions alleging interference with parenting time, in August 2024, the court appointed a guardian *ad litem* (GAL), attorney Matthew Grob, to report on M.G.T.'s circumstances.

¶ 7 In March 2025, Allyssa was arrested for several offenses surrounding a hit-and-run accident while M.G.T. was in her vehicle. The record indicates that she used her car to strike the victim's car with him inside of it, the victim having been her paramour at the time, and that there were children in both vehicles. The following day, the court entered an order that gave Jacob sole parental responsibilities and suspended Allyssa's parenting time.

¶ 8 In May 2025, Allyssa entered a negotiated plea to the offense of aggravated battery and was accepted into a mental health court 18-month diversion program. Meanwhile, Jacob enrolled M.G.T. in an elementary school closer to his home in Will County. In August 2025, Allyssa petitioned for parenting time and an interim order was entered restoring her parenting time. On September 26, 2025, the court entered an interim order, which established a parenting time schedule and protocols for the parties' communication using a court-approved online platform. The order also stated that the parties were not to speak to M.G.T. regarding the present litigation or make disparaging comments about each other.

¶ 9 On November 10, 2025, the court held a hearing on pending motions including the allocation of parental responsibilities. As both parties were *pro se*, each was compelled to serve as

both advocate and witness. To say that the hearing was difficult would be a drastic understatement. Both parties routinely interrupted each other and the court and had difficulty staying on task, especially when questioning each other.

¶ 10    The first witness, the GAL, attorney Grob, testified regarding the history of this case. The GAL explained that there had previously been concerns with M.G.T. while she was in Allyssa's care. Specifically, M.G.T. was often late to school and displayed behavior that was described as overly flirtatious for a child at ages six and seven. But M.G.T.'s attendance and social issues largely abated when Jacob became the primary parent in March 2024.

¶ 11    According to the GAL, M.G.T. loves both of her parents, despite their inability to cooperate with each other. M.G.T. sees a counselor every other week and has adjusted well to her new elementary school. The GAL noted the most recent episode between the parties occurred at a parent-teacher conference, which resulted in Jacob calling the police. The GAL noted a history of both parties routinely calling the authorities (police, DCFS, paramedics) and making unfounded accusations because of their inability to reasonably communicate with each other. The GAL stated that despite these episodes, the interim scheduled parenting plan was for the most part a success and suggested that Allyssa be given an additional overnight visit to achieve relative parity with respect to parenting time. The GAL pointed out too that the parties have a rich history of communicating with each other using their cell phones outside the court-approved platform, and by using M.G.T.'s scheduled Facetime calls to speak to each other (presumably in front of M.G.T.). The GAL encouraged the court to bar the parties from communicating outside of a new platform (One Family Wizard), which the court indicated would absolutely be a part of the judgement.

¶ 12    Allyssa testified she was taking one online six-week college course through Colorado Technical University for her "associate's degree," but did not state in what field. Allyssa testified

that she was presently unemployed, but actively participating in court-ordered services for her diversion program, which she indicated had hampered her employment. When asked how she would provide for M.G.T., she stated that M.G.T. "doesn't need much" and that when necessary Allyssa would ask her mother for money. Allyssa also parents M.G.T.'s younger half-brother. When asked about using the court-approved messaging platform, Allyssa testified that she receives "sometimes 20 to 40 text messages a day" from Jacob. (For the benefit of the reader, we note that screenshots of text messages are appended to numerous motions in the record, all of which indicate that *both* parties are guilty of serial, and often disparaging, texting outside court-approved channels.)

¶ 13    Jacob testified that he is a full-time student at Northwestern University's Prison Education Program. He is studying psychology and has a research fellowship. He pointed out again (as he has many times before) that he has roughly a 3.9 GPA. He also worked part-time as a delivery driver, though it was unclear if he maintained that occupation. Jacob's testimony primarily sought to portray Allyssa's parenting as haphazard and chaotic, and shed little light on his day-to-day parenting of M.G.T.

¶ 14    On December 3, 2025, the trial court entered a detailed 22-page allocation judgment, with a specific parenting plan and schedule for both parties. The judgment provided that the parties would have joint parental responsibility for significant decision making regarding M.G.T.'s education, health, religious, and extracurricular activities. The judgment ordered an alternating 4/3 weekly schedule to achieve parenting time at roughly a 50/50 basis, with alternating yearly holidays. The court ordered the parties to communicate exclusively through One Family Wizard, and that absent agreement otherwise, exchanges of M.G.T. would occur in the parking lot of the Oswego police department. The court also issued a series of instructions to both parties regarding

their behavior during parenting time, and the importance of positive, appropriate communication with the minor and with each other. (The judgment also addressed imputed income and child support, which we have explained is not before us at this time.)

¶ 15　On December 5, 2025, on Jacob's motion, the court entered an order modifying the allocation judgment to confirm that Jacob would be considered the majority parent for purposes of determining school-district residency. As noted, Jacob filed a motion to transfer venue as well as a notice of appeal. Again, no transcript has been provided to us with the trial court's oral rendition of the allocation judgment or of any post-judgment proceedings.

¶ 16　　　　　　　　　　　　　　II. ANALYSIS

¶ 17　Jacob's brief is primarily a conversational rendering of his complaints about the proceedings below. For his statement of facts, he offers pages and pages of unsupported allegations of Allyssa's contacts with police, none of which were introduced into evidence at the hearing. In his argument section, he asserts that the trial court erred when it: "fail[ed]" to consider Jacob's evidence, the GAL's recommendations, and Allyssa's "mental health and criminal history"; demonstrated "[b]ias" and violated due process "by requiring [Jacob] to function simultaneously as both a witness and an advocate" while also "restricting his access to necessary notes and exhibits" during his testimony; "[i]gnore[d] red flags and overemphasiz[ed] minor concerns[.]" He asks that we reverse and remand for a new hearing, and order the trial court to permit him to "present[ ] relevant exhibits, including digital evidence and expert testimony" and that we further "exercise [our] discretion to alleviate any costs associated with evidence submission" and "grant a new hearing with full procedural fairness ***." Jacob does not define his request with any more clarity, but the gravamen of his brief suggests that the trial court erred by granting Allyssa any decision-making authority or parenting time.

¶ 18    Jacob's statement of facts violates Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020)), and his argument section fails to develop points or cite to case law or the record in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Much of Jacob's brief has been liberally copied-and-pasted from his unsuccessful motions before the trial court. What is more, as we explain below, Jacob's conclusory assertions are absolutely belied by the record.

¶ 19    Jacob's *pro se* status does not insulate him from criticism or from compliance with the basic rules of stating claims before this court. As we have told Jacob before—when admonishing him about the same errors in prior appellate briefing—*pro se* litigants are " 'presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys.' " *In re Parentage of M.G.T.*, No. 2-25-0552, ¶ 9 (2025) (quoting *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067 (2009)). In fairness, Allyssa's appellee's brief is also not a model of compliance, but she is not the party challenging the trial court's judgment. We expect more, particularly from an undergraduate student with education and resources many self-represented parties simply do not have access to and, regardless, we are entitled to it. See *id.* ¶ 7 (noting that the appellate court is "not simply a repository in which appellants may dump the burden of argument and research") (quoting *People v. Chatman*, 357 Ill. App. 3d 695, 703 (2005)).

¶ 20    We turn to the merits. The Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2024)) governs litigation involving the allocation or modification of parental responsibilities and parenting time. Statutory authority requires that a circuit court allocate decision-making responsibilities according to the child's best interests (750 ILCS 5/602.5(a) (West 2024)). Relevant here, this requires the court to consider: the child's adjustment to her home, school, and community; the mental and physical health of all individuals involved; the ability of

- 7 -

the parents to cooperate to make decisions, or the level of conflict between the parties that may affect their ability to share decision-making; the wishes of the parents; the child's needs; whether any restrictions on the parent are appropriate; the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child; and any other factor that the court expressly finds to be relevant. 750 ILCS 5/602.5(c) (West 2024). These factors are also considered in the allocation of parenting time as well. 750 ILCS 5/602.7(b) (West 2024). The trial court is not required to make explicit findings on each factor and is not required to refer to every factor in its judgment. *In re Marriage of Diehl*, 221 Ill. App. 3d 410, 424 (1991). Such decisions are reviewed with the highest possible deference to the trial court, in light of its ability to have seen the parties up close and to judge their testimony. *Id*. Accordingly, we will overturn the trial court's judgment if and only if it is contrary to the manifest weight of the evidence. *In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004).

¶ 21    On the merits, Jacob offers surprisingly little, particularly in light of the high burden imposed by the standard of review. The hearing transcript reflects that the trial court conducted as thorough of an allocation hearing as it could have under the circumstances. At the hearing, neither party asked focused questions of the GAL or of each other. Still, contrary to Jacob's assertions, the trial court clearly did consider and accept the GAL's recommendations, as the court's allocation judgment adopted the 50/50 parenting-time schedule and the joint decision-making allocation that the GAL suggested.

¶ 22    Similarly, the trial court barred *both* parties from testifying from their notes. This was not novel, nor was Jacob singled out as many *pro se* litigants find themselves in the same position. Of course, all lay witnesses must first testify from their recollection, to ensure they have the requisite personal knowledge of the subject matter. See Ill. R. Evid. 602 (eff. Jan. 1, 2011). Notes may only

- 8 -

be used to refresh a lay witness's recollection. See Ill. R. Evid. 612 (eff. Jan. 1, 2011). At no point during the hearing however did Jacob indicate that his memory was exhausted, and so his claim that he needed his notes is a complete nonevent under established rules of evidence. See *People v. Shatner*, 174 Ill. 2d 133, 153 (1996) ("it is fundamental that a witness' memory can be refreshed only after it has been established that the witness has no memory concerning the facts in question").

¶ 23 As for Jacob's claims of bias, we note that the trial court repeatedly expressed its frustration with *both* parties for failing to follow the basic rules of trial procedure. We have carefully examined the record and detected no hint of partiality from the trial court judge whatsoever. Rather, the record shows precisely what it ought to: that the trial court gave both sides a full and fair hearing on the testimony and evidence they *chose* to present. The same is true of the allocation judgment, as the trial court's detailed and comprehensive order shows that its requirements were *very* carefully considered.

¶ 24 It appears to us that Jacob is apt to dismiss anything less than his full custody and exclusive parenting time as a hallmark of injustice. We are not persuaded. For example, Jacob asserts that Allyssa should be denied parenting time because she is, according to him, "a lying, thieving, violent, suicidal, mentally unstable prostitute." Incendiary rhetoric aside, we find it compelling that Jacob had an opportunity to present *evidence* to substantiate his claims yet failed to introduce anything that would justify such a statement in whole or in part. Clearly, that absence of proof was not lost on the trial court either, who declined to impose any parenting-time restrictions on Allyssa. We remind Jacob that all claims in a legal setting require *factual* support.

¶ 25 Undeterred, Jacob suggests this case is comparable to *In re Marriage of Palarz*, 2022 IL App (1st) 210618, but it is not. In *Palarz*, the circuit court made a finding of serious endangerment based on evidence of the father's alcohol abuse and restricted his parenting time. *Id.* ¶ 31. On

review, the appellate court noted that evidence of the father's alcohol abuse was "presented alongside evidence of [his] mental health difficulties, erratic behavior, hostile treatment of [the child's mother], and the testimony of the guardian *ad litem.*" *Id*. The appellate court determined that the circuit court's finding was not against the manifest weight of the evidence. *Id*. In contrast, here, we have been presented with no specific evidence, only innuendo, which is patently insufficient. The trial court did not enter a serious-endangerment finding, and Jacob failed to present any evidence at the hearing that would warrant one. We are compelled to point out that the state and federal constitutions protect the rights of a fit parent to make decisions for their children and to have parenting time without government interference (*In re M.M.D.*, 213 Ill. 2d 105, 116 (2004)), and that no judicial finding has been made that *either* party is unfit to parent M.G.T.

¶ 26    "It is no small burden to show that a circuit court's ruling on decision-making responsibilities is against the manifest weight of the evidence." *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 50 (citing *In re Marriage of Agers*, 2013 IL App (5th) 120375, ¶ 25)). "A decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on evidence." *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 51. In these types of cases, " 'there is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence and determine the best interests of the child[ren].' " *Jameson*, 2020 IL App (3d) 200048, ¶ 50 (quoting *Agers*, 2013 IL App (5th) 120375, ¶ 25); see also *In re Marriage of Eckert*, 119 Ill. 2d 316, 330 (1988). It is well settled that we will not reweigh the evidence or set aside the trial court's decision simply because we might have drawn a different conclusion. *Id.* ¶ 51. The question we must ask is whether the conclusions drawn by the trial court were reasonable and based on the evidence. *Id.* Here, even without a transcript of the trial court's findings, we have little difficulty in determining that its allocation judgment was not only

reasonable but narrowly tailored based on the evidence presented. No more need be said on the subject.

¶ 27 There are however two final matters we must address. After this appeal was submitted, Jacob filed yet another appeal related to this case, which we have docketed as No. 2-26-0228. Jacob then requested that we consolidate this case with that one and asked that we delay our disposition here. We decline. Despite the still-ongoing nature of proceedings in the trial court, our supreme court has emphasized the need for finality in decision-making cases under Rule 304(b)(6) and Supreme Court Rule 311(a). Our review of ancillary matters is subordinated to decisions affecting the welfare of a child, as it should be. That said, we would be doing Jacob a disservice if we did not point out the disservice he is doing to himself. This is now the third appeal related to this case in which Jacob has sought to present issues that, for one reason or another, are not properly before this court and in which he also (more importantly) has flagrantly violated the rules regarding appellate briefing. Child custody matters are serious and sensitive, and in the interest of a just resolution of this case, we have elected to ignore these mistakes. See *In re Parentage of Melton*, 321 Ill. App. 3d 823, 826 (2001). Nevertheless, we caution Jacob that the "failure to comply with the rules regarding appellate briefs is not an inconsequential matter" (*Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7), and that any future leniency should not be expected. See *id*. ¶ 15 (striking appellant's brief and dismissing appeal).

¶ 28 The second issue concerns a motion for sanctions that Jacob filed after Allyssa filed her appellee's brief. We took that motion with the case and now deny it. The basis for the motion is Allyssa's statement in the notice of filing that she served Jacob with a copy of her appellee's brief using Our Family Wizard, which Jacob denies having received. Whatever the case, Jacob clearly

received her brief and filed a reply brief, late, without leave of court. On our own motion, we grant leave to file *instanter*.

¶ 29                                    III. CONCLUSION

¶ 30    Jacob's motion for sanctions is denied, and as noted above (*supra ¶* 4), we dismiss from this appeal any challenge to any order other than the allocation judgment. However, with respect to the allocation judgment, for the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 31    Appeal dismissed in part; judgment affirmed.